**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 07-cv-00230-CMA-KLM

STEPHEN REES,

     Plaintiff,

v.

BOARD OF COUNTY COMMISSIONERS OF ADAMS COUNTY, COLORADO,

     Defendant.

---

## ORDER REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

This matter is before the Court on Defendant Board of County Commissioners of Adams County, Colorado's Motion for Summary Judgment (Doc. # 31).  For the following reasons, the Motion is GRANTED.

## INTRODUCTION AND FACTUAL BACKGROUND

This is an employment discrimination lawsuit.  The following facts are taken from the parties' briefs and pleadings and are undisputed for purposes of this Motion.

Plaintiff Stephen Rees is a male.  He alleges that his employer, the Adams County Department of Social Services ("Social Services") discriminated against him on the basis of his gender and in retaliation for a previous lawsuit that he filed in 2003.  Social Services is a division of the Adams County Government, which is governed by Defendant.  The upper management of Social Services contains some male workers,

but the majority of supervisors are women.  Plaintiff's supervisor during the relevant

time period, Angela Lytle, was also a woman.

Plaintiff has worked for Social Services since March 1999.  In 2002, Social

Services demoted Plaintiff from a "Social Caseworker IV" to a "Social Caseworker III."

Social Services claims that it demoted Plaintiff because of his inappropriate behavior

towards female clients and women in the office.  At the time, Plaintiff disagreed and he

filed a lawsuit alleging that Social Services had demoted him because of his gender.

The lawsuit settled in January 2005 and Plaintiff remained a Social Services employee.

In February 2005, Social Services selected Plaintiff to work in the intake section

of the Social Services sex abuse unit on an interim basis.  Plaintiff believes that Social

Services intended to place him in the sex abuse intake position on a permanent basis

on October 24, 2005.  However, on October 20, 2005, Social Services removed him

from the sex abuse intake position and placed him in the child protection intake position.

Plaintiff alleges that Ms. Lytle told him that she was transferring him out of the sex

abuse intake position "because of [his] previous lawsuit."

The transfer to the child protection intake position did not change Plaintiff's

pay, prestige, office location or general job responsibilities.  Plaintiff still performed

essentially the same job functions (intake) and even dealt with some sex abuse

investigations, albeit in the child protection unit.  Aside from his allegation that Social

Services retracted the offer of a permanent position, the only other material change in

employment that Plaintiff identifies is that Social Services moved his desk from a solo

cubicle near his co-workers to a shared cubicle farther away from his co-workers. When another solo cubicle opened up, Social Services gave the solo cubicle to someone with less seniority than Plaintiff.

As of the date Defendant filed this Motion, Plaintiff remained employed by Social Services.

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint with two claims for relief on January 31, 2007 (Doc. # 1). Defendant filed a motion to dismiss pursuant to Rule 12(b)(5), which the Court denied on August 7, 2008 (Doc. # 23). Defendant answered and the parties proceeded with discovery. (Doc. # 24.) On December 19, 2008, Defendant filed the instant Motion for Summary Judgment. Plaintiff responded to the Motion (Doc. # 41), Defendant filed a reply brief (Doc. # 46) and the Motion is now ripe.

## STANDARD OF REVIEW

A court may grant summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact . . . ." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). The movant bears the initial burden to show an absence of evidence that would support the non-movant's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant meets this burden, the responding party must come forward with evidence to demonstrate a genuine issue for trial. *Id.* A fact is material only if it "might affect the outcome of the

suit under governing law . . . ."  *Sanchez v. Denver Pub. Schs.*, 164 F.3d 527, 531 (10th Cir. 1998).  On a motion for summary judgment, a court should view the record in a light favorable to the non-movant.  *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).

## DISCUSSION

Based on the applicable law and factual record in this case, the Court concludes that Plaintiff has not raised a triable issue of fact on certain key elements of his claims.

## I.    DISCRIMINATION

Regarding the discrimination claim, Plaintiff fails to present any facts from which a reasonable jury could infer an intent to discriminate against Plaintiff by Social Services.

### A.    Applicable Law – Employment Discrimination

Plaintiff's discrimination claim raises an interesting twist on the standard framework applicable to Title VII discrimination claims.

#### 1.    *The McDonnell-Douglas Framework*

The crux of a Title VII discrimination claim is, of course, the employer's intent to discriminate.  A plaintiff can prove discrimination by direct or circumstantial evidence.  *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008); *Bullington v. United Airlines, Inc.*, 186 F.3d 1301, 1320-21 (10th Cir. 1999).  However, because employers rarely state their discriminatory motives in an obvious way, plaintiffs typically rely on circumstantial evidence.  *See Sanjuan v. IBP, Inc.*, 160

4

F.3d 1291, 1297 (10th Cir. 1998).  In these circumstantial cases, the Supreme Court has directed district courts to apply a three-step, burden shifting analysis to determine whether summary judgment is appropriate.  *See McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The first step of the framework is the plaintiff's *prima facie* case of discrimination. *Id.* at 802; *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1226 (10th Cir. 2000).  If a plaintiff fails to make out a *prima facie* case, summary judgment is appropriate.  *See Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981) ("The *prima facie* case serves an important function in the litigation:  it eliminates the most common nondiscriminatory reasons for the plaintiff's [treatment by an employer]".).  If a plaintiff can state a *prima facie* case, the burden shifts to the employer to show a legitimate business reason for its actions.  *McDonnell-Douglas*, 411 U.S. at 806; *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 529 (10th Cir. 1994).  If the employer can offer a legitimate business reason, summary judgment should be granted unless the plaintiff can show that the proffered reason was merely a pretext for discrimination.  *Garrett v. Hewlett-Packard Co.*, 305 F.3d 1210, 1216 (10th Cir. 2002). A plaintiff may show pretextual motive by producing evidence that demonstrates the employer's proffered reason for acting adversely is "unworthy of belief."  *Adamson*, 514 F.3d at 1146 (citing *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir. 1995)). Regardless of the burden shifting analysis, courts should keep in mind that, at all times,

the employee retains the burden of proving that his employer intentionally discriminated against him.  *Burdine*, 450 U.S. at 253; *Adamson*, 514 F.3d at 1145.

2.    *Reverse Discrimination Under Title VII*

As noted above, a typical plaintiff has the initial burden to present a *prima facie* case of discrimination under *McDonnell-Douglas.  See* 411 U.S. at 802; *Kendrick*, 220 F.3d at 1226 .  The elements of a *prima facie* case of discrimination are:  (1) plaintiff belongs to a **protected class**; (2) plaintiff suffered an adverse employment action; and (3) the adverse action occurred under circumstances giving rise to an inference of discrimination.  *Hysten v. Burlington N. & Santa Fe R.R. Co.*, 296 F.3d 1177, 1181 (10th Cir. 2002) (emphasis added).

Unlike a typical case, this case involves reverse discrimination; that is, discrimination against a person who does not belong to a protected class.  *See Notari v. Denver Water Dept.*, 971 F.2d 585, 588-90 (10th Cir. 1992).  In reverse discrimination situations, the Tenth Circuit Court of Appeals has altered the standard *prima facie* analysis.  *Id.* at 588.  Only if a plaintiff can establish background facts that raise a suspicion that the defendant is an "unusual employer who discriminates against the majority" can a plaintiff rely on the *McDonnell Douglas* presumption in favor of discrimination.  *See id.* at 589 (a Title VII plaintiff "who pursues a reverse discrimination claim, and seeks to obtain the benefit of the *McDonnell Douglas* presumption, must, in lieu of showing that he belongs to a protected group, establish background

6

circumstances that support an inference that the defendant is one of those unusual employers that discriminates against the majority").

However, a non-protected plaintiff's inability to establish the background facts to rely on the *McDonnell-Douglas* presumption does not foreclose him from obtaining relief under Title VII. *Id.* A non-protected plaintiff may still state a case for discrimination by presenting direct evidence (which, as noted above, is difficult for a plaintiff to come by), or by presenting "indirect evidence sufficient to support a reasonable probability, that but for the plaintiff's status the challenged employment decision would have favored the plaintiff . . . ." *Id.* at 590 (citing *Holmes v. Bevilacqua*, 794 F.2d 142, 146 (4th Cir. 1986) (en banc)). Either showing, direct or indirect, will move a reverse discrimination plaintiff to the next step of the *McDonnell Douglas* burden-shifting framework. *Notari* 971 F.2d at 590-91.

B.    Plaintiff Cannot Establish A *Prima Facie* Case of Gender Discrimination.

Plaintiff has presented no direct evidence to support his claim of gender discrimination. Thus, he must turn to the circumstantial evidence test under *McDonnell-Douglas* as refined by *Notari*.

1.    *The McDonnell-Douglas Presumption Does Not Apply.*

Plaintiff fails to show that Social Services is an unusual employer that discriminates against the majority. In fact, Plaintiff presents virtually no facts to support the idea that Social Services routinely discriminates against males. The only "evidence" Plaintiff has brought forth on this issue is his own allegation that Social Services has

7

more female than male employees, but this allegation is not supported by a citation to the factual record.  Plaintiff identifies nothing else in the record that would allow the Court to grant him the *McDonnell Douglas* presumption in favor of discrimination. As such, in order to state a *prima facie* case, Plaintiff must present evidence to show a "reasonable probability, that but for the [P]laintiff's status the challenged employment decision would have favored [P]laintiff . . . ." *Notari*, 971 F.2d at 590.  Plaintiff cannot make this showing, either.

2.    *Plaintiff Cannot Show Discriminatory Intent.*

Plaintiff identifies no facts in the record that would lead the Court to infer gender discrimination by Social Services.  For example, Plaintiff does not argue that the employee who replaced him in the sex abuse intake position was a female, that other males in the office complained of discrimination or that the atmosphere in the workplace was permeated with a discriminatory air.  Further, he has not identified any specific policy that might imply institutionalized discrimination by Social Services.

The only undisputed facts that Plaintiff identifies to support his allegation of discrimination are that a majority of supervisors are female and that his own supervisor, Ms. Lytle, is also a female.  However, the simple fact that women outnumber men at Social Services does not, without more evidence, raise a question of fact regarding whether Social Services discriminated against Plaintiff because of his gender.  Plaintiff has not identified any policy at Social Services that causes women to outnumber men and he has not provided any type of statistical analysis or argument to support his claim

8

of disparate hiring or promotion.  Plaintiff did not even attach a roster of Social Services employees to prove that Social Services does, in fact, employ more female supervisors than male supervisors.

The remaining facts likewise do not imply a discriminatory motive.  Plaintiff's prior lawsuit does not raise a factual question regarding discrimination against men by Social Services, because the parties settled that suit without any admission of liability and Plaintiff has not pointed to any relevant evidence from that lawsuit that might apply in this action.  Additionally, the gap of over eight months between the settlement in Plaintiff's earlier lawsuit and the transfer to the child protection intake position militates against an inference of discriminatory intent.

Moreover, Ms. Lytle's statement to Plaintiff does not reflect intent by Social Services to discriminate on the basis of gender.  Instead, her statement refers only to Plaintiff's previous lawsuit, not to his gender, as the reason for transferring Plaintiff.  Perhaps Ms. Lytle's statement reflects retaliatory intent, but it does not raise an inference of gender discrimination under the circumstances of this case.

In short, Plaintiff has presented nothing except for his own completely speculative and unsupported hunch that Social Services transferred him from the sex abuse intake position because of his gender.  However, Plaintiff's unsupported hunch does not translate to a *prima facie* case of discrimination.  Thus, the Court concludes that summary judgment is appropriate on this claim.

## III.    RETALIATION

Regarding his retaliation claim, Plaintiff has not established a necessary element of his *prima facie* case because he has failed to show that he suffered an adverse employment action.

A.    Applicable Law – Retaliation

The *McDonnell Douglas* burden-shifting framework also applies to Title VII retaliation claims. *Wells v. Colorado Dep't of Transp.*, 325 F.3d 1205, 1213 (10th Cir. 2003). To state a *prima facie* case for unlawful retaliation, a plaintiff must show that: (1) he engaged in protected opposition to discrimination; (2) he was subjected to an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Kendrick*, 220 F.3d at 1234; *see also Vaughn v. Epworth Villa*, 537 F.3d 1147, 1150 (10th Cir. 2008). Only if the plaintiff can meet these three elements will his claim move survive summary judgment.[1] *Wells*, 325 F.3d at 1212.

For purposes of this analysis, Plaintiff has met the first and third elements of his *prima facie* case for retaliation. Thus, the only element at issue is whether Plaintiff can demonstrate that he suffered an adverse employment action. Although, the Tenth Circuit liberally defines "adverse employment action," *Wells*, 325 F.3d at 1212-13, in order to sustain liability, the employment action must materially affect an employee's job

---

[1]    Given the lack of a "protected class" element in a retaliation claim, the unique aspects of a reverse discrimination claim described in *Notari* do not apply.

status.  *See Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) ("A tangible

employment action constitutes a **significant** change in employment status, such

as hiring, firing, failing to promote, reassignment with **significantly** different

responsibilities, or a decision causing a significant change in benefits.") (emphasis

added); *see also Aquilino v. University of Kan.*, 268 F.3d 930, 934 (10th Cir. 2001).  The

determination regarding whether an employment action is adverse is made on a case-

by-case basis.  *Sanchez*, 164 F.3d at 532; *Jeffries v. Kansas*, 147 F.3d 1220, 1232

(10th Cir. 1998).

 B. <u>Plaintiff Cannot Demonstrate That He Suffered An Adverse Employment
Action</u>.

  Plaintiff contends that Social Services took two adverse employment actions

against him:  (1) it transferred him from a permanent intake position in the sex abuse

division to an intake position of unknown duration in the child protection division,

and (2) it moved him from a solo cubicle to a shared cubicle farther away from his

co-workers.  The Court concludes that neither action is sufficiently adverse to state

a *prima facie* case of retaliation.

  1. *The Job Transfer Was Not An Adverse Employment Action.*

  Regarding Plaintiff's transfer from the sex abuse intake position to the child

protection intake position, the transfer did not cause Plaintiff to suffer any decrease in

salary, prestige, job title, or responsibilities.  *See, e.g., Ellerth*, 524 U.S. at 761 (noting

that action must be significant).  In contrast to what Plaintiff must show to demonstrate

an adverse employment action, the record discloses that he still occasionally deals with

cases of sex abuse in his new intake position, the same work he was doing in his old intake position.  *See Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (noting that reassignment of job duties "is not automatically actionable").  Plaintiff has also failed to show that transfer to the child protection intake position will affect his ability to move up the ranks at Social Services or to advance his career with another employer.

Moreover, Plaintiff's allegation that Social Services retracted an offer of a permanent position in the sex abuse unit is completely unsupported by the evidence. Not to belabor this point, but, once again, Plaintiff has not identified any facts in the record (*e.g.*, documents or deposition testimony) indicating that Social Services actually offered Plaintiff a permanent position in the sex abuse unit.  To survive summary judgment, Plaintiff must do more than rest on the allegations in his complaint.

Plaintiff's complaint also contradicts his argument on this point.  Plaintiff admits that Social Services transferred him to the child protection position four days before he "was placed in the [sex abuse intake] position on a permanent basis."  (*See* Doc. # 1, ¶¶ 18-19.)  Perhaps the complaint contains a typo or lacks an explanatory sentence. However, even if the Court views the transfer in a light favorable to Plaintiff and assumes that his new child protection intake position is temporary or interim, the transfer from sex abuse intake to child protection intake was a transfer from one interim position to another; that is not an adverse employment action.

2.      *The Desk Relocation Was Not An Adverse Employment Action.*

Plaintiff's allegation that he suffered an adverse employment action because Social Services relocated his desk from a solo cubicle to a shared cubicle borders on frivolous.  Plaintiff has not demonstrated that his shared cubicle has caused him any hardship or that his new cubicle is significantly less desirable than his old cubicle.  Minor annoyances like being located farther from co-workers or office amenities are not tangible employment actions.  *See, e.g., Stone v. Mukasey*, 2008 WL 1883548, *7 (D. Colo. Apr. 25, 2008) (no discrimination when employee was moved to smaller office that lacked amenities of her old, larger office).  Moreover, the Court questions how Plaintiff could complain that he was "isolated" (Doc. # 43 at 3) in his new **shared** cubicle when he previously occupied a **solo** cubicle?  The facts in the record establish that Plaintiff suffered no pernicious effect from his job transfer or his desk relocation.

In sum, the only evidence Plaintiff has to support the purported adverse change in employment status is his own, unsupported allegation regarding the offer of a permanent position in the sex abuse intake position.  However, unsupported allegations cannot survive a properly supported motion for summary judgment like that filed by Social Services; Plaintiff must present facts in the record, which he has not done in this case.  Thus, the Court concludes that he has not established a necessary element of the *prima facie* case for his retaliation claim.

## **CONCLUSION**

For the reasons described above, Plaintiff has failed to meet his burden to present a *prima facie* case of discrimination or retaliation.  Thus, Social Services is entitled to Summary Judgment on both of Plaintiff's claims.

Accordingly, the Motion for Summary Judgment (Doc. # 31) is GRANTED.

IT IS FURTHER ORDERED that this case is DISMISSED WITH PREJUDICE, each side to bear its own costs.

IT IS FURTHER ORDERED that the Final Trial Preparation Conference set for June 29, 2009 and the four-day jury trial set to commence July 20, 2009 are hereby VACATED.

DATED:  May   27  , 2009

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge